IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SUMMER SELF,

        Plaintiff,

        vs.                 Case No. 12-1317-JTM

COUNTY OF GREENWOOD, *et al.*,

        Defendants.

MEMORANDUM AND ORDER

Plaintiff Summer Self alleges that, while she was held in the Greenwood County Jail from September 14, 2011 to early October 2011, defendant Leslie D. Lumley, then a Captain in the Greenwood County Sheriff's department, forced her to expose herself to him in order to obtain special treatment, and exposed himself to her, in order to satisfy his own sexual gratification. Self has brought an action under 42 U.S.C. § 1983 against Lumley and Sheriff Rusty Bitler, as well as Greenwood County and the Greenwood County Sheriff's Department. The matter is before the court a Motion to Dismiss filed by Sheriff Bitler, the Sheriff's Department, and Greenwood County (here collectively referred to as the Greenwood County Defendants). (Dkt. 8). Lumley has filed a separate Motion to Dismiss. (Dkt. 20).

Self was held in jail from September 14, 2011 until early the next month, after she was arrested for negotiating a bad check and failing to appear. Self alleges in her Complaint that she was twice "compelled to expose herself unclothed to Captain Lumley, in order for her to be allowed out of her individual cell or for other favorable treatment." (Dkt. 4, ¶ 18). The Complaint also alleges that "Captain Lumley exposed himself to Plaintiff, seeking sexual gratification." (*Id.* ¶ 19). This conduct is alleged to have been "captured in part on jail surveillance cameras," was "unnecessary for any legitimate law enforcement reason," and "was motivated solely for the sexual or other gratification of Captain Lumley." (*Id.* ¶ 20).

The Complaint seeks recovery from the Greenwood County Defendants and Captain Lumley under two separate theories. She asserts the claim under 42 U.S.C. § 1983 that the "Defendants, individually and together, violated Plaintiff's constitutionally guaranteed right to privacy under the 4th and 14th Amendments to the United States Constitution" and denied her "requested mental/psychological care constitut[ing] a denial of necessary medical treatment in violation of the 8th Amendment." (Id. ¶¶ 24-25). Self also asserts that "Defendants and their agents/employees" violated K.S.A. § 19-1919 by violating a duty "to care for her in a reasonable manner, treat her humanely, and/or treat her so as to promote her reform" under (Id. ¶ 32)

*Greenwood County Defendants*

The Greenwood County Defendants argue that the Complaint against them should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6), as the Complaint fails to present factual assertions which would support a finding of liability, citing the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Following these decisions, the court presented with a 12(b)(6) motion must ignore the legal conclusions, labels, and any formulaic recitation of the elements, and determine whether there are specific facts alleged which would raise a right to relief beyond the merely speculative. *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210 (10th Cir. 2011). That is, the "mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge At Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original). "Absent vicarious liability, each Government official [in a § 1983 claim], his or her title notwithstanding, is only liable *for his or her own misconduct*." Iqbal, 192 S.Ct. at 1949 (emphasis added).

Self's individual capacity § 1983 claims against the Greenwood County Defendants must be dismissed under these standards, as the Complaint makes no allegation of any personal participation by Sheriff Bitler or other Greenwood County Defendants. It is not enough, as plaintiff argues, to cite to the brief portion of the Complaint generically stating that "Defendants" somehow motivated Lumley's actions. This is precisely the sort of

3

formulaic recitation rejected in *Twombly* and *Iqbal*. The Complaint fails to allege any individual violations by the Greenwood County Defendants as it lacks any attempt to show how any individual defendant (other than Lumley) caused the alleged constitutional violation.

When a Complaint alleges constitutional violations by state officers, it must include "facts sufficient to show (assuming they are true) that the defendants plausibly violated [his or her] constitutional rights, and that those rights were clearly established at the time." *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008). The plaintiff must "make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claim against him or her, as distinguished from collective allegations against the state." *Id.* at 1250.[1]

Second, the court finds that any claims against Sheriff Bitler would also be subject to qualified immunity. *See Anderson v. Creighton*, 483 U.S. 635, 638 (1987); *Harlow v. Fitzgerald*, 457 U.S. 800, 814 (1982). Bitler argues that he is entitled to qualified immunity because the Complaint fails to demonstrate that he violated any clearly established statutory or constitutional right. Here, the Complaint lacks any specific factual allegation as to Bitler, let alone any allegation demonstrating conduct by him which violated any

---

[1] The Complaint also advances a purely formulaic conclusion that Self was denied medical care while at the jail. (Dkt. 4, ¶¶ 21, 25). The Complaint is entirely devoid of any specific factual allegations relating to such a claim, let alone factual allegations demonstrating the plausibity of such a claim. There is no discussion of what medical care Self allegedly required, what care was given or denied, or the medical consequences of the alleged deprivation. Accordingly, the Eighth Amendment denial of medical care claim is subject to dismissal under *Twombly* and *Iqbal*.

specific, clearly-established right. The Complaint is wholly conclusory with respect to the alleged violation of constitutional rights by Sheriff Bitler, and dismissal is the appropriate result.

More broadly, the official capacity and municipal liability claims against Sheriff Bitler are subject to dismissal under the Eleventh Amendment. The Tenth Circuit has recognized that Kansas county jails and sheriffs are protected by Eleventh Amendment immunity. *See Hunter v. Young*, 238 F3d.Appx. 336, 338 (10th Cir. 2007). *See also Nielander v. Board of County Comm'rs*, 582 F.3d 1155 (10th Cir. 2009) (reaching same result as to Kansas county attorneys). Created by the state legislature through Article 9 § 2 of the Kansas Constitution and employing discrete and autonomous powers recognized by statute, Kansas sheriffs are state officers supported by particular provisions in the state statutes. *See Steadfast Ins. Co. v. Agricultural Ins. Co.*, 507 F.3d 1250, 1253 (10th Cir. 2007). Although these officers are locally funded, and generally operate in their particular county, these factors are respectively not dispositive or of limited importance. *McMillian v. Monroe County*, 520 U.S. 781 (1997). See *Wilson v. City of Chanute*, 43 F. Supp. 2d 1202, 1216 (D. Kan. 1999). More importantly, sheriffs are state officers given particular charge of jails under state statutes. The court finds that, as to the charges advanced here, Bitler is protected by the Eleventh Amendment.[2]

---

[2] The determination that the Greenwood County Defendants are protected by the Eleventh Amendment is also dispositive of Self's pendent state law claims against these defendants. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121-22(1984) ("neither pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment").

Moreover, a municipal entity cannot be held liable under 42 U.S.C. § 1983 on the principle of *respondeat superior*; the plaintiff advancing a § 1983 claim against a municipality must show that she was harmed by an official policy. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). Liability exists "only where the municipality *itself* causes the constitutional violation at issue." *Canton v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell*, 436 U.S. at 694–95) (emphasis in original). The plaintiff may establish a claim under § 1983 for the actions of a subordinate actor if she demonstrates "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds v. Richardson*, 614 F.3d 1185, 1199-1200 (10th Cir. 2010). The failure to adequately train or supervise employees, amounting to a deliberate indifference to injury of the type suffered by the plaintiffs, may create the basis for municipal liability. *Canton*, 489 U.S. at 388-91.

In the present action, Self alleges the existence of such a policy in her contention that the Greenwood County Defendants "negligently hired, retained, trained and supervised" Lumley, such that this neglect "amount[ed] to a deliberate indifference." (Dkt. 4, ¶ 28). But aside from the bare assertion, the Complaint provides no specific factual allegations as to the asserted municipal policy. The Complaint provides no explanation for how any policy of the Greenwood County defendants supported, allowed, or condoned Lumley's actions, and no factual allegations supporting the contention that such a policy reflects deliberate indifference to her alleged injuries. "Baldly asserting that Plaintiff's injuries are the result

6

of the City's policies does not show this Court what the policy is or how that policy subjected Plaintiff to suffer the denial of a constitutional right and in such cases, a failure to train claim against a city must be dismissed." *Cuevas v. City of N.Y.*, No. 07-4169, 2009 WL 4773033, at *4 (S.D.N.Y.2009). *See also Mulholland v. Classic Management*, 09-2525, 2010 WL 2470834, *4 (E.D. Pa. 2010) (bare assertion of inadequate training, unsupported by specific factual allegations, may be disregarded under *Twombly*); *Curney v. City of Highland Park*, No. 11-12083, 2012 WL 1079473, *5 (E.D.Mich. March 30, 2012) (under *Twombly* and *Iqbal*, plaintiff must allege specific facts supporting the claim if inadequate training or supervision); *Bumpas v. Metropolitan Gov't of Nashville*, No. 07-0766, 2010 WL 1417747, *3 (M.D. Tenn. April 1, 2010).

*Lumley*

Lumley, who is apparently no longer a Captain with the Greenwood Sheriff's office, separately moves for dismissal. He argues that notwithstanding Self's attempt to cast her sexual harassment claim as a violation of the right to privacy under the Fourth and Fourteenth Amendments, her claim is properly viewed as a claim of cruel and unusual punishment under the Eighth Amendment, pursuant to the conclusion of the Tenth Circuit in *Adkins v. Rodriguez*, 59 F.3d I 034 (10th Cir. 1995).

The plaintiff relies on *Cumbey v. Meachum*, 684 F.2d 712 (10th Cir. 1983) as support of her contention that her claim is viable as a constitutional privacy claim, and is not subject to Eighth Amendment standards. That case, however, not only precedes the direct

7

observation in *Adkins* that such claims should be viewed under the prism of the Eighth Amendment, it is factually inapposite here.

The court in *Cumbey* simply acknowledged that some courts had recognized a privacy claim where there were allegations "if guards *regularly* watch inmates of the opposite sex who are engaged in personal activities, such as undressing, using toilet facilities, or showering." 684 F.2d 712 (emphasis added). In the present case, Self alleges that Lumley had her disrobe on two occasions.

Without mitigating the seriousness of the allegation against Lumley, controlling law provides that Self's claims should be considered with the context of the Eighth Amendment. As the Tenth Circuit ruled in *Adkins*, notwithstanding the plaintiff's attempt to assert privacy claims grounded on other constitutional protections, "'[i]t is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.'" 59 F.3d at 1037 (quoting *Helling v. McKinney*, 509 U.S. 25, 31 (1993)). Thus, the court in *Adkins* observed that "although she generally invokes the First, Fourth, Fifth, and Fourteenth Amendments, [the plaintiff's] claim remains bounded by the Eighth Amendment, the 'explicit textual source of constitutional protection' ... in the prison context." *Id.* (quoting *Graham v. Connor, 490 U.S. 386, 395 (1989)). See generally Hudson v. Palmer*, 468 U.S. 517, 527-28 (1984) ("[a] right to privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure the institutional security and internal order").

8

And viewed through this prism, plaintiff has failed to demonstrate the existence of a constitutional violation. Cases involving similar acts of harassment have concluded that those actions, however reprehensible in themselves, failed to rise to the level of a violation of the plaintiff's rights under the Eighth Amendment. *See Joseph v. Federal Bureau of Prisons*, No. 00-1208, 2000 WL 1532783, at *1 (10th Cir. Oct. 16, 2000) (incidents of exposure and suggestive touching were not objectively serious enough to violate Eighth Amendment); *Reid v. Secretary of Florida Dep't of Corrections*, No. 11-15708, 2012 WL 3326293, *4 (11th Cir. Aug. 15, 2012) (inmate required to disrobe did not state claim under the Eighth Amendment); *Williams v. Anderson*, No. Civ.A. 03-3254-CM, 2004 WL 2282927, at *3-4 (D. Kan. Sep. 7, 2004) (exposure coupled with grabbing inmate's buttocks from behind might present state tort claim, but not constitutional violation). In her response, Self makes no argument that Lumley's actions would violate the Eighth Amendment, seeking to repackage her claims under other constitutional rights, openly acknowledging "the difficulty the court might have with an Eighth Amendment claim under the facts at bar." (Dkt. 23, at 3). Because, as noted earlier, the court is required by *Adkins* to view Self's claims through the prism of the Eighth Amendment, dismissal is appropriate.

In addition to his contention that no Eighth Amendment violation occurred under the facts of the case, Lumley also argues that even if such a violation occurred, he is entitled to qualified immunity, asserting that the Eighth Amendment right was not clearly established. Self's response, which focuses solely on her Fourth and Fourteenth privacy claim, makes no attempt to argue that an Eighth Amendment right would have been

9

clearly established under the facts of the case. As the court noted earlier, plaintiff's claim must be considered under standards governing Eighth Amendment claims. Lumley's qualified immunity argument as to the Eighth Amendment sexual harassment claim is therefore conceded.

This leaves Self's claim of an alleged denial of medical care and her pendent state law claim. As Lumley stresses in his motion to dismiss, and as the court has noted in the present Memorandum and Order, *Twombly* and *Iqbal* require more than generic or formulaic claims that a particular right exists. Accordingly, the Eighth Amendment deprivation of medical care against Lumley is dismissed. *See supra*, at 4, n. 1. Self provides no argument that her pendent state law claims should survive in the absence of any remaining federal claim (Dkt. 23, at 9), and the court therefore will dismiss the pendent claims against Lumley without prejudice.

IT IS ACCORDINGLY ORDERED this 15th day of February, 2013, that the defendants' Motions to Dismiss (Dkt. 8, 20) are granted.

                                              s/J. Thomas Marten
                                              J. THOMAS MARTEN, JUDGE